## No. 2325
### Second Circuit Appeal

## W. T. NETTLES v. DR. F. A. BLANCHARD

(June 23, 1925, Opinion and Decree.)

*(Syllabus by the Editor.)*

1. **Louisiana Digest—Appeal—Par. 625, 626, 627.**

Where the credibility of witnesses and the preponderance of evidence is in favor of the defendant in a suit for damages for assault and battery, the judgment of the lower court being correct is affirmed.

Appeal from Ninth Judicial District Court of Louisiana, Parish of Rapides, Hon. L. L. Hooe, Judge.

This is a suit for damages to plaintiff's minor son by assault and battery. There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

Peterman, Dear and Peterman, of Alexandria, attorneys for plaintiff, appellant.

Overton and Hunter, of Alexandria, attorneys for defendant, appellee.

CARVER, J.   Plaintiff sues on behalf of his minor son, Luther Nettles, for damages alleged to have been inflicted on him in three assaults and batteries, two by Dr. F. A. Blanchard and his employee, Arthur A. Gremillion, and the other one by Dr. F. A. Blanchard alone.

According to the averments of plaintiff's petition, Luther climbed over a fence separ-

ating the backyard of defendant's theatre from an alleyway, for the purpose of getting his cap which had been thrown there by a playmate, and while in the act of climbing back over the fence to the street he was assaulted by Dr. Blanchard and Gremillion who struck him with sticks, beating him in the face, threw him to the ground and kicked him. That then he was roughly grabbed by Blanchard and. Gremillion and carried to the theatre through which he was dragged over the seats, being kicked while going through the theatre by both Blanchard and Gremillion, and slapped in the face while going through, then pushed and kicked through the front door. And afterwards, when Luther was some distance away, on premises not belonging to defendant, defendant Blanchard struck him on the nose, causing it to bleed, and shoved or kicked him into the street.

Doctor Blanchard's version of the affair is that while sitting in his office, which is upstairs in the back part of the building containing a moving picture show, he heard a noise in the back yard, went to the window and walked on the roof, where he saw Luther Nettles, Phillips and Tassin at the gate trying to push it open; that the Nettles boy climbed the wall, whereupon he went downstairs, got Gremillion and together went into the picture show and he and Gremillion took seats in the front row next to the screen, from which place they saw the boys open the door of the theatre and come in. That when the boys saw him and Gremillion they started to go out, when he and Gremillion followed them into the the yard, and Phillips began to climb the wall to go out, Nettles waiting until he got over. That he remonstrated with Nettles for coming in the way he did, and not wishing the boy to climb the wall and not having any key to the gate he took Nettles by the arm and led him through the theatre, accompanying him only about half way, when he returned to see if the the boys had broken or damaged the door, and Nettles went out. Further, that about fifteen or twenty minutes afterwards when near a drug store a short distance away from the theatre building, he came upon Luther and upon Luther's making some remark he put his hand on his shoulder, telling him if he did not stop that talk and behave himself he would turn him over to an officer.

He denies that either he or Gremillion struck Luther either with sticks, their hands or anything else, or that they kicked him or abused him in any way whatever.

Luther gave testimony substantially in accord with the allegations of the petition.

The alleged assault in the backyard and also what may be regarded as the third alleged assault, that near the drug store, is testified to also by Louis Tassin, age 14, and Thomas Phillips, whose age is not given but who is evidently a boy in his teens.

Luther's testimony as to his being dragged through the picture show over the benches is not corroborated by any one, except as to the statement that he was kicked out of the front door.

If these witnesses are telling the truth, the plaintiff is entitled to recover.

On the other hand, Doctor Blanchard's version of what occurred in the backyard is corroborated by Patrick Lorens, a colored porter at the Rapides Club, who claims to have seen that part of it from the roof garden of the club, and also by Arthur A. Gremillion, an employee of Dr. Blanchard.

Doctor Blanchard's version as to what occurred going through the theatre is corroborated by Gremillion and E. E. Bordelon a carpenter who is sometimes employed by Doctor Blanchard. His version of that part of the affair taking place near the the drug store is corroborated by Ferdinand

Ingouf, collector and salesman for Pollock & Company, who is not shown to have any relation with either party to the suit.

No weight can be given to the testimony of Tassin. His statements, both in and out of court, contradict each other.

The testimony of Luther Nettles is weakened not only by the fact of his interest in the case but also by the fact that Baillio, probation officer and police officer, testified that his reputation for truth and veracity was bad, and no effort was made to contradict this testimony.

The case turns largely on the weight to be accorded to the testimony of the various witnesses, and this depends chiefly on their credibility. It is not a case of witnesses being honestly mistaken but of telling the truth or deliberately telling an untruth.

The District Judge who heard and saw them adopted the version given by defendant and his witnesses. In this court the plaintiff carries the burden of proof which is made heavier by the judgment of the lower court being against him as well as a numerical preponderance of witnesses. His counsel recognizes the weight of the burden thus resting on him but claims that Luther's version is borne out by the physical facts and is besides inherently more reasonable and probable than that of defendant.

The physical facts are Luther's torn clothes, his bleeding from the nose, and leg, and stripes on his back, arms and shoulder.

These marks on Luther's person were proven by the testimony of his mother, father, brother and, to some extent, by City Judge Nachman.

As to the bleeding from the leg, it is admitted that he had a sore leg before the affair and he might well have made it bleed afresh by some accident. So with his bleeding at the nose; this might have been caused in a fight or in play with other boys.

It is not pretended that there was any bleeding from the stripes on the back, arms or shoulder but only that they were black and blue. This, too, might have been caused by some one else than Blanchard.

Neither Luther's father, mother, brother nor the judge pretends to have known how any of these wounds were received or how his clothes were torn.

In the face of Doctor Blanchard's positive denial that he inflicted any of the wounds, corroborated as it is by so many witnesses and evidently believed by the District Judge, we cannot accept the testimony of Luther, discredited as he is by Baillio's testimony and his interest in the case without more corroboration than we find in the record.

It does not seem to us that plaintiff's version of the affair is the more reasonable.

If defendant had mistreated Luther to the extent alleged we think it likely that of the fifty or more people in the show, the several outside of the show, and those at the drug store when the third alleged assault was committed, some would have protested or at least would have offered their services to plaintiff as witnesses.

For these reasons the judgment of the lower court is affirmed.